# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

| | |
|---|---|
| ALLAN GARLOFF and WANDA GARLOFF, | No. 19-CV-4040-CJW-MAR |
| | **MEMORANDUM OPINION AND ORDER** |
| Plaintiffs/Counterclaim Defendants, | |
| vs. | |
| KIM A. SHAFFER, as Trustee of the RUTH A. DRAUT REVOCABLE TRUST, | |
| Defendant/Counterclaim Plaintiff. | |
| _____ | |
| KIM SHAFFER, as Trustee of the RUTH A. DRAUT REVOCABLE TRUST, | No. 19-CV-4013 CJW-MAR |
| | **MEMORANDUM OPINION AND ORDER** |
| Plaintiff/Counterclaim Defendant, | |
| vs. | |
| ALLAN GARLOFF and WANDA GARLOFF, | |
| Defendants/Counterclaim Plaintiffs. | |

_____

## TABLE OF CONTENTS

I.    FACTUAL BACKGROUND ………………………………………………… 3

II.   PROCEDURAL BACKGROUND ………………………………………… 5

III.   SUMMARY JUDGMENT STANDARD ................................................. 7

IV.   ANALYSIS ................................................................................... 8

     A.   Validity of the Lease ............................................................. 9

          1.   Written Direction Requirement ......................................... 10

          2.   Evidence Draut was Acting as a Trustee ............................. 12

          3.   Ratification ................................................................ 15

          4.   Promissory Estoppel ..................................................... 16

          5.   Equitable Estoppel ....................................................... 18

     B.   Plaintiffs' Second Counterclaim .............................................. 19

V.   CONCLUSION ............................................................................. 21

This matter is before the Court on defendant's Renewed Motion for Partial Summary Judgement. (Doc. 30). Defendant requests declaratory relief stating the lease at issue is void and that the Court enter judgment against plaintiffs on their Second Counterclaim.[1] (*Id.*, at 1). Plaintiffs timely resisted defendant's Motion for Partial Summary Judgment (Doc. 31) and defendant filed a timely reply (Doc. 33). For the following reasons, defendant's Motion for Partial Summary Judgment is **granted**.

---

[1] On October 23, 2019, the Court ordered cases Nos. 19-CV-4013-CJW and 19-CV-4040-CJW be consolidated. (Doc. 12). The Court designated 19-CV-4040 as the lead case. (*Id.*, at 2). Because 19-CV-4040-CJW is the lead case the Court will refer to Allan and Wanda Garloff as the plaintiffs and Kim A. Shaffer, as trustee of the Ruth A. Draut Revocable Trust, as defendant. Unless indicated otherwise, docket citations are to entries for 19-CV-4040-CJW.

2

# I.    FACTUAL BACKGROUND

In July 1997, Ruth A. Draut ("Draut") created the Ruth A. Draut Revocable Trust ("Trust").  (Doc. 23-1, at 1).  Draut funded the Trust by transferring parcels of real property she owned to the Trust.  (*Id.*).  On May 20, 1998, Draut transferred farmland she owned in Dickinson County, Iowa ("Dickinson County property") to the Trust in fee simple via a warranty deed.  (*Id.*, at 1–2).  All property in the Trust was to be administered in accordance with the Trust's terms.  (*Id.*, at 2).  Draut served as the Trust's original trustee and designated Kim A. Shaffer ("defendant") to serve as the successor trustee when Draut became unwilling or unable to perform her duties.  (*Id.*, at 3).  On July 20, 2018, Draut passed away at the age of 85.  (*Id.*, at 4).  Defendant took over as trustee following Draut's death.  (*Id.*).

Draut rented out the Dickinson County property as farmland in the years preceding her death.  On August 27, 2010, Draut signed a lease for the Dickinson County property with George Garloff ("George").  (Doc. 26, at 3).  George paid Draut $9,500 cash rent "per year for the 2011, 2012, and 2013 crop years."  (*Id.*).  On December 20, 2013, shortly after George's death, Draut signed a lease for the farmland with George's son, Allan Garloff, one of the plaintiffs in this matter.  (*Id.*, at 3–4).  Under the lease, plaintiffs paid Draut $15,000 cash rent "per year for the 2014, 2015, 2016 and 2017 crop years."  (*Id.*, at 4).

On April 28, 2017, Draut signed another lease with plaintiffs to rent the land for the crop years 2018–2022 (the "Lease").  (Doc. 23-1, at 3).  The Lease reads as follows:

> Allan Garloff of Rural Lake Park, Iowa shall continue to rent my land containing 160 acres more or less for the crop years of 2018-2022.  This land is in Dickinson County, Excelsior Township, SE ¼ of Section 8, T 99N, R 38W in Rural Lake Park, Iowa[.]
>
> Proper conservation methods of farming and weed control shall be maintained.

3

> Total payment for each year shall be $15,000.00. Payment due March 1st
> of each year.
>
> Renters Signature: _____ Date_____
> Landlord Signature:_____ Date_____

(Doc. 32, at 15). The dates and amount of rent were left blank and filled in by hand when the lease was signed. Allan and Wanda Garloff each signed on the "Renter's Signature" line and Draut signed on the "Landlord Signature" line. (*Id.*). Each party dated the lease April 28, 2017. (*Id.*). Plaintiffs paid Draut $15,000 for the 2018 crop year before Draut passed away. (Doc. 26, at 4).

The Trust included several amendments that were added after the Trust was first created. (Doc. 30-3, at 16–31). Under the Fourth Amendment to the Trust, the Trust gave tenants of the Trust's properties "the option, exercisable within six (6) months of [Draut's] death, to purchase [particular] real estate from [Draut's] trust at ninety-five percent (95%) of appraised value as of the date of [Draut's] death." (Doc. 30-3, at 28). Defendant sent Allan Garloff a letter on August 6, 2018, informing plaintiffs of the option to purchase the property, explaining that Dickinson County property would be sold at auction in 2019 if plaintiffs did not exercise the option, and notifying plaintiffs that the Lease would be terminated. (*Id.*, at 76–77). Plaintiffs' counsel responded on August 24, 2018, with a letter asserting that the Lease gives Allan Garloff "the right to continue to rent the farm through the 2022 crop year." (*Id.*, at 78). Defendant responded in another letter dated August 30, 2018, with a copy of the appraisal, informing plaintiffs that their purchase price of the Dickinson property was $1,054,500 and that they had until January 21, 2019, to exercise the purchase option. (*Id.*, at 79–81). In a letter dated January 7, 2019, defendant informed plaintiffs' counsel that Allan Garloff had "called and indicated that he was not interested in purchasing the farm from the Trust on a Contract for Deed," and that defendant would seek relief from the Court if plaintiffs did

4

not give an acceptable response by January 21, 2019. (*Id.*, at 105). Plaintiffs' counsel responded with a letter dated January 19, 2019, acknowledging the January 7 letter and stating that Allan Garloff "has a right to rent the farm pursuant to the [Lease] through the 2022 crop year." (*Id.*, at 106).

## II.    PROCEDURAL BACKGROUND

This case involves three related matters. First, on April 8, 2019, defendant filed suit against plaintiffs in the United States District Court for the Northern District of Iowa. (Doc. 1, No. 19–CV–4013). Defendant alleged claims for failure to follow trust formalities, undue influence, unconscionability, unjust enrichment, and trespass. (*Id.*, at 5-8). Second, on the same day defendant filed suit against plaintiffs, defendant also filed suit against Mark and Bryan Tewes (collectively, the "Tewes") in this Court. (Doc. 1, No. 19–CV–4014). Defendant's action against the Tewes involved similar facts and raised the same claims for failure to follow trust formalities, undue influence, unconscionability, unjust enrichment, and trespass. (*Id.*, at 5–8). Third, on June 11, 2019, plaintiffs filed a petition for a declaratory judgment in the Iowa District Court for Dickinson County. (Doc. 2). Plaintiffs sought a declaration from the Iowa District Court that their Lease was valid. (*Id.*, at 3). Defendant removed the state court action to this Court on grounds that the Court has diversity jurisdiction under Title 28, United States Code, Section 1332. (Doc. 1, at 1).

On October 1, 2019, Magistrate Judge Mark A. Roberts requested position statements from plaintiffs, defendant, and the Tewes regarding consolidation of the above matters. (Doc. 8). In his October 1, 2019 Order, Judge Roberts noted that the three cases involved similar parties, disputes over the validity of similar farm leases, and similar claims. (*Id.*, at 2). The Order noted, however, that two of the matters involved different parcels of real estate and different leases. (*Id.*). The parties did not object to consolidating 19–CV–4013 and 19–CV–4040, the two cases involving plaintiffs.

Defendant did, however, object to case 19–CV–4014 (involving the Tewes) being consolidated with the other two cases involving plaintiffs because the cases involved several factual differences. (Doc. 11). Thus, the Court ordered 19–CV–4013 and 19–CV–4040 to be consolidated but ordered 19–CV–4014 to proceed independently. (Doc. 12).

On October 1, 2019, the Court issued a Scheduling Order with various deadlines, including a May 22, 2020 discovery deadline, and June 24, 2020 dispositive motion deadline. (Doc. 7). On December 5, 2019, defendant filed a Motion for Partial Summary Judgment before discovery concluded. (Doc. 20). Plaintiffs then filed a Motion to Deny the Defendant's Motion for Partial Summary Judgment or, Alternatively for an Extension Under FED. R. CIV. P. 56(d). (Doc. 21). Plaintiffs timely resisted defendant's Motion for Partial Summary Judgment (Doc. 23) and defendant timely replied (Doc. 25). Defendant also timely resisted plaintiffs' Motion to Deny the Defendant's Motion for Partial Summary Judgement or, Alternatively for an Extension Under FED. R. CIV. P. 56(d). (Doc. 24). On February 11, 2020, the Court issued an Order denying defendant's motion without prejudice to reassertion and granting plaintiffs' motion to extend discovery. (Doc. 29). The Court gave defendant fourteen days after discovery closed on May 22, 2020, to file its supplemental motion for summary judgment and gave plaintiffs seven days to file a response to any such motion. (*Id.*).

On June 5, 2020, defendant filed a Renewed Motion for Partial Summary Judgment. (Doc. 30). Plaintiffs filed a resistance to defendant's motion (Doc. 31), as well as a sealed response to defendant's motion (Doc. 32). Defendant timely replied to plaintiffs' response. (Doc. 33). The case is currently scheduled for a jury trial to commence on December 28, 2020. (Doc. 13, at 3).

### III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). When asserting that a fact is undisputed or is genuinely disputed, a party must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c)(1)(A); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Alternatively, a party may show that "the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(B). More specifically, a "party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." FED. R. CIV. P. 56(c)(2).

A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citation omitted). "An issue of material fact is genuine if it has a real basis in the record," *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citation omitted), or "when a reasonable jury could return a verdict for the nonmoving party on the question," *Wood v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (internal quotation marks and citation omitted). Evidence that presents only "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249–50, does not make an issue of fact genuine. In sum, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" that it requires "a jury or judge to resolve the parties' differing versions of the truth at trial." *Id.* at 249 (citation and internal quotation marks omitted).

The party moving for summary judgment bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citation omitted). Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and by depositions, affidavits, or other evidence designate specific facts showing that there is a genuine issue for trial. *See Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005).

In determining whether a genuine issue of material fact exists, courts must view the evidence in the light most favorable to the nonmoving party, giving that party the benefit of all reasonable inferences that can be drawn from the facts. *Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014); *Matsushita*, 475 U.S. at 587-88 (citation omitted); *see also Reed v. City of St. Charles*, 561 F.3d 788, 790 (8th Cir. 2009) (stating that in ruling on a motion for summary judgment, a court must view the facts "in a light most favorable to the non-moving party—as long as those facts are not so 'blatantly contradicted by the record . . . that no reasonable jury could believe' them") (alteration in original) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). A court does "not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004) (citation omitted). Rather, a "court's function is to determine whether a dispute about a material fact is genuine." *Quick v. Donaldson Co.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996). When considering a motion for summary judgment, the court "need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3).

## IV.    ANALYSIS

Defendant's Motion for Partial Summary Judgment presents two issues for the Court to consider; first, whether the Lease is valid, and second, whether plaintiffs' Second Counterclaim fails as a matter of law. (Doc. 30). For the following reasons, the

Court finds the Lease is invalid and that plaintiffs' Second Counterclaim fails as a matter of law. Thus, defendant's Motion for Partial Summary Judgment is **granted.**

### A. *Validity of the Lease*

In its previous order on this matter the Court found that legal title to the Dickinson County property was transferred to the Trust in 1998. (Doc. 29, at 9). Thus, the Lease can only be valid if Draut followed the Trust's provisions on how to convey Trust property. (*Id.*, at 10). Under the Trust provisions, Draut could lease the Dickinson County property on the Trust's behalf in two ways; first, Draut could direct the Trust or trustee in writing to lease the Dickinson County property, or second, Draut could sign the Lease in her role as the trustee. (*Id.*).

Defendant argues that the lease signed by Draut and plaintiffs is invalid because Draut signed the lease in her individual capacity. (Doc. 30-1, at 6–8). Defendant also argues Draut could not lease the land in her individual capacity because the land belonged to the Trust. (*Id.*). Defendant claims there is no evidence Draut either directed the Trust or trustee in writing to lease the Dickinson County property or entered into the lease in her role as trustee. (*Id.*, 7–8).

Plaintiffs make five arguments in support of their claim that the Lease is valid. First, plaintiffs argue that "[b]ecause Draut was the [grantor, trustee, and income beneficiary of the Trust] the requirement of written directions to the trustee is not applicable." (Doc. 31-1, at 7). Second, plaintiffs contend "[t]here is evidence that Draut was acting as trustee in executing the leases and accepting rent payments on behalf of the Trust." (*Id.*, at 8). Third, plaintiffs argue that "[t]he [t]rustee is precluded from denying the validity of the lease based on Draut's ratification of the lease and [t]rustee's acceptance of rent payments." (*Id.*, at 10). Fourth, plaintiffs argue that "[t]he [t]rustee is estopped from denying the validity of the Lease under the doctrine of promissory

estoppel." (*Id.*). Finally, plaintiffs argue "[t]he [t]rustee is equitably estopped from denying the validity of the Lease." (*Id.*, at 11).

The Court will address plaintiffs' arguments in turn.

### 1. Written Direction Requirement

In its previous order the Court found that Draut could not lease the Dickinson County property in her individual capacity because the Trust, and not Draut, had legal title to the property. (Doc. 29, at 10). The Court also found, however, that Draut had the authority to tell the Trust or trustee, in writing, what to do with the property. (*Id.*).

Plaintiffs make two arguments about the written direction requirement. First, plaintiffs argue that when the sole trustee and the grantor are the same person, as was the case here, the requirement of a written direction from herself should be relaxed or eliminated. (Doc. 31-1, at 7). Second, plaintiffs argue the Lease itself and the acceptance of rent checks by Draut "establish the direction by Draut for the Trust to lease the property to [plaintiffs]." (*Id.*).

The Court turns first to plaintiffs' argument that the written requirement is relaxed or eliminated when the lessor or grantor and the trustee are the same person. Plaintiffs cite a state court decision from Virginia in support of their argument. (*Id.*) (citing *Austin v. City of Alexandria*, 574 S.E.2d 289 (Va. 2003)). Although the Court may consider a Virginia state court case as persuasive authority for plaintiffs' argument, it is not binding on this Court. Indeed, plaintiffs do not cite any Iowa caselaw consistent with the relevant proposition in that case. Also, "[c]ases involving construction of trusts necessarily turn on their own peculiar facts thereby diminishing the precedential value of previous case law." *Brenneman v. Bennett*, 420 F.2d 19, 24 (8th Cir. 1970).

*Austin v. City of Alexandria* appears to support plaintiffs' argument, but it largely consists of conclusory statements about the written direction requirement and does not include significant discussion or explanation. In *Austin v. City of Alexandria*, the grantor

of the trust at issue was also the trustee. 574 S.E.2d at 293. The Virginia Supreme Court stated: "Notice to the trustee of the Living Trust of the withdrawal of the property from that trust, on the facts of this case, is a non-issue." *Id.* The Virginia Supreme Court "accepted the contention that the notice requirements for withdrawal . . . ha[d] been satisfied." *Id.* There is no additional discussion about the writing requirement beyond this. Thus, although *Austin* provides some support for plaintiffs' argument, it is not binding on this Court and does not provide enough reasoning to persuade the Court to accept the holding without more.

Absent any contrary authority, the Court finds no reason to relax the written direction requirement. The Trust document determines rights and obligations of the trustee and the beneficiaries under the Trust. Iowa Code § 633A.1105. Also, it is the Court's duty to determine the settlor's intent based on the language of the instrument and give effect to all provisions of the trust when reasonably possible. *See In re Steinberg Family Living Tr.*, 894 N.W.2d 463, 468 (Iowa 2017). Here, the Trust document unambiguously states that written direction to the trustee was required for Draut, acting in her individual capacity, to effect a transfer of the legal title to the Dickinson County property. Absent binding authority to the contrary, the Court cannot simply remove language from the Trust document because the Court finds it excessive or unnecessary.

Next, to the extent plaintiffs assert that the Lease itself and Draut's acceptance of rent satisfy the written direction requirement, the Court disagrees. Neither the Lease nor the rent checks are pieces of writing from Draut directing the trustee to lease the land. The Lease is a written document between Draut and plaintiffs. The rent checks are negotiable instruments plaintiffs provided to Draut. Thus, neither of these writings can be considered a written direction from Draut to the trustee. The Court finds there is no genuine issue of fact that Draut, individually, did not direct herself, in her capacity as trustee, to enter into the lease with plaintiffs.

11

## 2. Evidence Draut was Acting as a Trustee

In its previous order the Court also found that the Trust authorized Draut to enter the lease in her role as trustee. (Doc. 29, at 10). The Trust states that in transferring property the "trustee can act without such written directions." (Doc. 23-3, at 7). The provision granting Draut, in her role as a trustee, the power to dispose of land is supported by caselaw and the trust code. "[T]here are decisions holding that broad powers of sale or other disposition which were included in a trust resided in the trustee . . .." *See Brenneman*, 420 F.2d at 24-25 (citing several cases). Also, the Iowa trust code provides that in addition to the powers provided by the trust instrument, a trustee can "[e]nter into a lease for any purpose as a lessor or lessee[.]" Iowa Code § 633A.4402(10).

To transfer property as a trustee, however, the lessor must be acting as the trustee. The clearest way to show that the lessor was acting as a trustee would be by including the word "trustee" or a reference to the Trust on the lease document. *See Austin*, 574 S.E.2d at 293 (finding the absence of any reference to the trust owning the property at issue determinative that the property was not properly conveyed under the trust's provisions). But the Court does not find that a signature including the word "trustee" is necessary. Indeed, none of the cases cited by the parties show an express "trustee" designation is required under Iowa law. Thus, the Court finds a party could conceivably show the lessor was acting as a trustee through other evidence. In short, if there is evidence that Draut signed the lease as trustee, the lease may be valid. Or, in the context of a motion for summary judgment, if there is a genuine issue of material fact whether Draut signed the lease as trustee, then summary judgment is inappropriate.

Plaintiffs argue that "a transfer of property by a trustee should be construed as valid even if the trustee's representative capacity is not shown on the transfer document." (Doc. 31-1, at 8) (citation omitted). As discussed above, the Court agrees that a "trustee"

12

designation on the Lease is preferable, but not essential, and the Court need not further address plaintiffs' first argument.

Plaintiffs also argue that, under the totality of the circumstances, there is evidence that Draut "acted in her capacity as trustee in the execution of the lease." (*Id.*, at 8–9). Plaintiffs argue that the following facts are evidence that Draut signed the Lease in her capacity as trustee: Draut deposited the first rent-check for the Dickinson County property into the Trust account instead of a personal account; Draut was aware she had no individual interest in the property; although Draut had previously signed documents in which she identified herself as "trustee," Draut did not personally prepare any of the previous documents that she signed as trustee; and, Draut used the same format for leases dating back to 1993. (*Id.*, at 9).

Defendant responds by asserting that Draut deposited all income, including her personal checks and tax return proceeds into the Trust account to avoid probate. (Doc. 33, at 3–4). Defendant also asserts that Draut had signed documents distinguishing her as a trustee in the past, so she understood how to act as trustee. (*Id.*, at 4). Defendant argues it is immaterial that the documents she signed as trustee were prepared by counsel and not herself. (*Id.*). Last, defendant asserts "the existence of past, invalid leases . . . or leases with third parties" does not affect the validity of the Lease. (*Id.*).

The Court agrees with defendant's assertion that "[plaintiffs] identify no facts reasonably evidencing Draut's trustee capacity." (*Id.*). First, Draut depositing the Dickinson County property rent check in the Trust account does not indicate Draut was acting as trustee. According to defendant, discovery did not uncover any personal bank accounts in which Draut could have deposited checks. (Doc. 33, at 3). Defendant argues this is because her accounts were set up to avoid probate, which necessarily meant that she deposited all her income, including tax returns and personal checks, into the Trust. (*Id.*). In other words, there was a comingling of all her funds in the Trust account which

13

negates a finding that she was acting as the trustee each time she deposited funds in the account. Also, Draut deposited the check at some point after she signed the Lease. Depositing the check later does not provide any insight into Draut's state of mind or role when she was executing the Lease. Thus, the Court cannot reasonable infer that Draut was acting as trustee solely because she deposited the rent checks into the Trust account.

The existence of past leases dating back to 1993 between Draut and plaintiffs, as well as between Draut and George Garloff, is also not evidence that Draut signed the Lease in her capacity as trustee. When viewing the evidence in the light most favorable to plaintiffs, that Draut signed the leases in the same manner both before and after the Trust was established shows that Draut did not distinguish between her role as an individual and her role as trustee. Indeed, that she signed the Lease the same way she had when she signed previous leases as an individual indicates she was not signing the Lease as a trustee here. Thus, evidence that Draut had signed similar leases with plaintiffs and George Garloff dating back to 1993 does not evidence that she was acting in her role as trustee when she signed the Lease.

Next, even giving all favorable inferences to plaintiffs, the Court finds it immaterial that Draut never personally prepared the documents which she had previously signed as trustee. Evidence that Draut had previously signed other documents as trustee shows that she had followed the Trust formalities before and was aware of her different roles. Although the documents may show that Draut did not know how to prepare the documents personally, the documents show that Draut knew she had to sign as trustee and that she knew how to contact her attorney to help her prepare the documents. Plaintiffs have not produced any evidence that Draut relinquished all responsibility to her attorney to draft documents without her direction or consent. Nor have plaintiffs produced evidence that she was unaware that she was signing the previous documents as

14

trustee. Thus, evidence that Draut had signed documents prepared by others as trustee does not provide evidence that she was acting as a trustee when she signed the Lease.

When Draut decided to create the Trust and obtain its benefits, she forfeited her right to transfer the Dickinson County property in her individual capacity. *See* RESTATEMENT (THIRD) OF TRUSTS § 25 cmt. a (AM. LAW INST. 2003). The forfeiture of this right, however, does not mean she could not attempt to transfer property belonging to the Trust even when she was aware she has no individual interest in the property. *See Austin*, 574 S.E.2d at 296 (holding that the conveyance of land by a settlor-trustee was invalid because he had not followed the formalities of the trust and was thus acting in his individual capacity). The Court cannot presume Draut was acting as trustee when she signed the lease simply because she was aware she had no individual interest in the property.

Thus, the Court finds there is no evidence suggesting Draut was acting as trustee when she signed the Lease.

### 3. Ratification

Ratification is based on the principle that a person should not be able to accept the benefits of a contract but deny his or her obligations under the contract. *Life Inv'rs Ins. Co. of Am. v. Estate of Corrado*, 838 N.W.2d 640, 647 (Iowa 2013). Further, ratification is meant to bind principals who take actions justifying a reasonable assumption they have consented to the agent's actions. *See NuTech Seed, LLC v. Roup*, 212 F. Supp. 3d 783, 791 (S.D. Iowa 2015) (citing *Estate of Corrado*, 838 N.W.2d at 646). According to plaintiffs, the Trust accepted the benefits of the lease by receiving the rent paid by plaintiffs. (Doc. 31-1, at 10).

The Court finds that plaintiffs fail to establish that the Trust ratified the Lease. For the doctrine of ratification to apply, there must be a principle-agent relationship. Any person acting as an agent of a trust must be properly assigned that role. *See*

15

RESTATEMENT (THIRD) OF TRUSTS § 80 (AM. LAW INST. 2007). The Court has already found that Draut was acting in her individual capacity, but there is no evidence Draut the individual was assigned to be an agent of Draut the trustee or the Trust itself. Draut's act of depositing the rent-check into the Trust account, i.e. a third-party account, in her individual capacity does not ratify the Lease on behalf of the Trust.

### 4. Promissory Estoppel

Plaintiffs argue defendant should be estopped from denying the validity of the lease of the Dickinson County property under the doctrine of promissory estoppel. (Doc. 31-1, at 10-11). Under Iowa law, the elements of promissory estoppel are:

> (1) [A] clear and definite promise; (2) the promise was made with the *promisor's* clear understanding that the promisee was seeking an assurance upon which the promisee could rely and without which he would not act; (3) the promisee acted to his substantial detriment in reasonable reliance on the promise; and (4) injustice can be avoided only by enforcement of the promise.

*Schoff v. Combined Ins. Co. of Am.*, 604 N.W.2d 43, 49 (Iowa 1999) (emphasis added). "A person basing a cause of action on equitable estoppel or promissory estoppel must demonstrate justifiable reliance on the defendant's promise, representation, or concealment of material facts." *Bruns v. Hartford Acc. & Indem. Co.*, 407 N.W.2d 576, 580 (Iowa 1987). "Because promissory estoppel is a form of equitable relief and applies only where a contract otherwise does not exist, a plaintiff may not assert a claim of promissory estoppel if the promise at issue is encompassed by a written and formal contract." *Rossley v. Drake Univ.*, 342 F. Supp. 3d 904, 942 (S.D. Iowa 2018) (citations omitted).

Plaintiffs' promissory estoppel claim fails in four distinct ways. First, the existence of the Lease itself precludes plaintiffs from asserting promissory estoppel. There is already a contract between plaintiffs and Draut for the rental of the property.

To the extent Draut individually breached that contract by failing to provide plaintiffs possession of the Dickinson County property during the lease term, plaintiffs have a claim at law against Draut (or her estate) for breach of contract. Plaintiffs' equitable claim for promissory estoppel against the Trust, however, fails as a matter of law.

Second, promissory estoppel can only be asserted against the promisor, not a third-party who possesses the subject of the promisor's promise. Again, the Court must differentiate between Draut the individual and Draut the trustee acting on behalf of the Trust. As the Court has repeatedly found, Draut entered the lease as an individual, thus any representation she made about the Dickinson County property was made in her individual capacity. Such representations cannot be used to bind the Trust.

Third, even if the Trust could be bound by Draut's individual representations, there is no evidence that plaintiffs have relied to their substantial detriment on the promises. According to plaintiffs, they paid Draut rent for the 2018 crop year, but there is no allegation that they were denied access to the property in that crop year. Similarly, plaintiffs have not alleged that they lost out on any other opportunities because they entered into the lease with Draut. Absent such facts in the record, plaintiffs' promissory estoppel claim fails as a matter of law. Additionally, plaintiffs' reliance was not justified because they could easily have determined the Trust owned the land. The Dickinson County conveyance was properly recorded and thus, plaintiffs could have discovered Draut did not own the property.

Finally, plaintiffs argue the equities support enforcement of the agreement. It is true plaintiffs' family has farmed the property since 1993. It is also true plaintiffs and Draut appear to have had a strong business relationship that each honored for several decades. The Court understands that plaintiffs had a long-standing relationship with both Draut and the land and does not take that fact lightly. That fact is not, however, enough to overcome an otherwise invalid lease. As the Court has noted several times, trust

17

formalities are important and must be followed. To allow an individual to convey property to which she does not have title would be contrary to basic principles of property law and would render title meaningless. Adhering to established principles of property law outweighs the equities of finding the lease valid.

Further, plaintiffs already received significant benefits from the lease. Plaintiffs enjoyed the benefit of farming the land for decades. Plaintiffs were also given the option of purchasing the land for 95 percent of its appraised value before the land went on the market. Even though the purchase price was high, it was discounted specifically for plaintiffs and allowed them to avoid competing in the marketplace. In other words, plaintiffs already received substantial benefits from the lease and were given preferential treatment throughout. Extending these benefits and giving plaintiffs a continued discount on rental fees would not justify enforcing an invalid lease.

### 5. Equitable Estoppel

In addition to their promissory estoppel claim, plaintiffs also argue defendant should be prevented from denying the validity of the lease on an equitable estoppel theory. (Doc. 31-1, at 11). Equitable estoppel is "applied to prevent fraud and injustice and exists wherever a party cannot in good conscious gainsay his own acts or assertions." *Dart v. Thompson*, 154 N.W.2d 82, 86 (Iowa 1967). To succeed on an equitable estoppel claim a party must show "(1) a false representation or concealment of material facts; (2) lack of knowledge of the true facts on the part of the actor; (3) an intention that the promise be acted upon; and (4) reliance thereon by the party to whom made, to his prejudice and injury." *Walters v. Walters*, 203 N.W.2d 376, 379 (Iowa 1973).

As the Iowa Supreme Court explained, equitable estoppel only applies against the person making the representation at issue. *See Dart*, 154 N.W.2d at 86 (noting that equitable estoppel applies to prevent a party from improperly benefitting from "*his own* acts or assertions" and noting that the doctrine prevents "a party [from making] a claim

inconsistent with *his former declarations or conduct*." (emphasis added)). Draut misrepresented she could lease the land in her individual capacity, and thus her misrepresentations cannot estop Draut acting as trustee or defendant as trustee from denying the validity of the lease. Also, equitable estoppel requires not just reliance, but "justified reliance" on the false representation. *Bruns*, 407 N.W.2d at 580. The deed to the Dickinson County property which showed the Trust's ownership was a public record, and thus plaintiffs could not have justifiably relied on the representation that Draut individually had authority to lease the property. Thus, as a matter of law, defendant is not equitably estopped from denying the validity of the lease.

### B. Plaintiffs' Second Counterclaim

Plaintiffs' Second Counterclaim asserts that defendant breached the provisions of the Fourth Amendment to the Trust and that they are entitled monetary damages or specific performance under Iowa Code Section 633A.4502. (Docs. 19, at 9-11; 31-1, at 12-14). Under the Fourth Amendment to the Trust, the Trust gave tenants of the Trust's properties "the option, exercisable within six (6) months of [Draut's] death, to purchase [particular] real estate from [Draut's] trust at ninety-five percent (95%) of appraised value as of the date of [Draut's] death." (Doc. 30-3, at 28). Plaintiffs argue that defendant violated this provision by offering to sell plaintiffs the Dickinson County property for the appraised "fee-simple" value instead of the appraised "leased-fee" value. (Doc. 31-1, at 12-13). Plaintiffs claim this was inappropriate because the Dickinson County property was allegedly encumbered by plaintiffs' own Lease as of the date of Draut's death. (*Id.*).

Plaintiffs' Second Counterclaim fails for several reasons. First, the Court found above that the Lease is not valid. Thus, the Dickinson County property is not encumbered by a lease because the Lease signed by plaintiffs and Draut is invalid. Defendant appropriately appraised the Dickinson County property for its fee-simple value. Indeed, because the Lease was invalid, the Trust was not bound to even offer plaintiffs the

19

opportunity to purchase the property at discount in the first place, regardless of how the property was valued.[2]

Second, Iowa Code Section 633A.4502 creates a cause of action for beneficiaries and co-trustees who have suffered a breach of the trust, and plaintiffs here do not fall under either category. Iowa Code Section 633A.4502 states, in part, that "to remedy a breach of trust which has occurred or may occur, a beneficiary or cotrustee of the trust may request the court to [impose a remedy]." Iowa Code Section 633A.1102(2) defines a "beneficiary" as "a person who has any present or future interest in the trust, vested or contingent, and also includes the owner of an interest by assignment or other transfer." Plaintiffs have not alleged any present or future interest in the trust and are not the owners of an interest by assignment or other transfer because the Lease is invalid. Plaintiffs are also not co-trustees and neither party makes any contrary argument.

Last, plaintiffs have not sustained any damages. The Trust gave plaintiffs an option exercisable within six months of Draut's death, and plaintiffs did not exercise that option. "The general rule is that the time prescribed for exercise of an option is of the essence, and if the option is not exercised within the time limited all rights of the optionee stand forfeited without notice." *Steele v. Northup*, 143 N.W.2d 302, 305 (Iowa 1966). The only exceptions to this rule are if the party granting the option uses "obstructive or

---

[2] The Court's finding that the Trust was not bound to offer plaintiffs the opportunity to purchase the property at a discount rate caused the Court to also consider whether the Trust's offer could be evidence that the Trust ratified the Lease, although plaintiffs do not make that argument and it is not the Court's responsibility to construct arguments for them. *Horn v. Airway Servs., Inc.*, No. 18-CV-3053-CJW-MAR, 2020 WL 420834, at *22 (N.D. Iowa Jan. 27, 2020). The Fourth Amendment to the Trust gave the option for tenants to purchase the land at a discount rate, so the Trust's offer to plaintiffs to purchase the property could be viewed as an acknowledgment that plaintiffs were valid tenants. (Doc. 30-3, at 28). The purchase option letters from defendant to plaintiffs, however, contain language that sufficiently shows defendant considered the Lease invalid. (*Id.*, at 76–77, 105). Thus, the Court considers the opportunity to purchase the property a courtesy extended by the Trust rather than an admission that plaintiffs were tenants with a valid lease.

delaying tactics" or does not inform the optionee of the act or payment needed to exercise the option, and the optionee communicates the intent to exercise the option before the specified time period. *Id.* Plaintiffs have not supplied any evidence indicating that defendant obstructed plaintiffs' ability to exercise the option or that plaintiffs notified defendant of an intent to exercise the option. Plaintiffs forfeited all rights related to the option, and thus cannot claim damages pursuant to the option.

## V. CONCLUSION

For these reasons, defendant's Renewed Motion for Partial Summary Judgment (Doc. 30) is **granted**. The Court finds the Lease between plaintiffs and Ruth A. Draut dated April 28, 2017, is void and of no effect. The Court further finds that plaintiffs' Second Counterclaim fails as a matter of law. The parties did not ask the Court to consider the remaining claims or dismiss this action. The Court thus declines to rule on the remaining claims here.

**IT IS SO ORDERED** this 2nd day of September, 2020.

_____
C.J. Williams
United States District Judge
Northern District of Iowa